[No. 67209-6-I. Division One. December 10, 2012.]

STEVEN J. STONE, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Robert A. Silber* (of *Foster Law Office*), for appellant.

*Robert M. McKenna, Attorney General,* and *Steve R. Vinyard, Assistant,* for respondent.

¶1 Cox, J. — Under chapter 51.32 RCW, a workers' compensation claimant is precluded from receiving both a pension and a permanent partial disability award if the pension is based on the combined effects of two or more related injuries.[1] Here, Steven Stone received a pension based on the combined effects of two separate industrial injuries. There is no evidence in the record that his two injuries are severable for purposes of the pension. The superior court correctly determined that he is not entitled to a permanent partial disability award for his first industrial injury. We affirm.

---

[1] *See* former RCW 51.32.080(4) (2007); *Stuckey v. Dep't of Labor & Indus.,* 129 Wn.2d 289, 296, 916 P.2d 399 (1996).

¶2 Stone filed a workers' compensation claim with the Department of Labor and Industries (DLI) after he suffered an injury to his right knee in 1997. DLI allowed the claim and paid benefits. It closed the claim in 2000. Later, DLI reopened the claim, and Stone had two surgeries on his knee.

¶3 In 2001, Stone filed another workers' compensation claim with DLI after he suffered an injury to his lower back. DLI allowed the claim, and Stone received treatment for his lower back and mental health conditions. In 2008, Stone requested a permanent partial disability award for at least 45 percent impairment to his knee. DLI never made such an award.

¶4 In April 2009, DLI issued two orders finding Stone to be permanently and totally disabled as a result of the combined effects of both the knee injury and the back injury in addition to his mental health conditions. Due to a typographical error, DLI then issued corrected orders for both claims in June 2009. DLI placed Stone on a pension, effective May 2009.

¶5 Stone appealed these orders. An industrial appeals judge issued a proposed decision and order after hearing testimony from Stone, two doctors, and a pension adjudicator. In July 2010, the Board of Industrial Insurance Appeals (BIIA) issued its decision and order, affirming both DLI orders. On appeal, the superior court affirmed the BIIA's decision and order, adopting the BIIA's factual findings as its own.[2]

¶6 Stone appeals.

## PERMANENT PARTIAL DISABILITY AWARD

¶7 Stone argues that DLI should have awarded him permanent partial disability benefits for his knee injury regardless of whether this prior injury was considered as

---

[2] Clerk's Papers at 70-72.

one of the combined effects underlying the permanent total disability pension. We disagree.

■ ■ ¶8 Judicial review in this court is governed by RCW 51.52.140, which provides that an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." This statutory scheme results in a different role for this court than is typical for appeals from administrative decisions.[3] Rather than sitting in the same position as the superior court, this court, under the Industrial Insurance Act (IIA),[4] reviews only " 'whether substantial evidence supports the trial court's factual findings and then review[s], de novo, whether the trial court's conclusions of law flow from the findings.' "[5]

¶9 In carrying out this review, we take the record in the light most favorable to the party who prevailed in superior court and do not reweigh or rebalance the competing testimony and inferences, or apply anew the burden of persuasion.[6] "Substantial evidence" is evidence " 'sufficient to persuade a fair-minded, rational person of the truth of the matter' " asserted.[7]

■ ■ ¶10 A failure to assign error to the trial court's findings of fact makes them verities on appeal.[8] Questions of law, including the construction of a statute such as the IIA, are reviewed de novo.[9]

---

[3] *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009).

[4] Title 51 RCW.

[5] *Rogers*, 151 Wn. App. at 180 (quoting *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006)).

[6] *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002).

[7] *Ferencak v. Dep't of Labor & Indus.*, 142 Wn. App. 713, 719-20, 175 P.3d 1109 (2008) (quoting *R&G Probst v. Dep't of Labor & Indus.*, 121 Wn. App. 288, 293, 88 P.3d 413 (2004)).

[8] *See Pellino v. Brink's, Inc.*, 164 Wn. App. 668, 682, 267 P.3d 383 (2011).

[9] *Clauson v. Dep't of Labor & Indus.*, 130 Wn.2d 580, 583, 925 P.2d 624 (1996).

¶11 Here, Stone does not assign error to any of the superior court's factual findings. Thus, they are verities on appeal.

¶12 The superior court adopted the BIIA's 10 factual findings as its own.[10] The findings that are relevant to our discussion are these:

1. **Claim No. P-559303** [knee injury]: . . . On May 22, 2009, the claimant filed an appeal with the Board of Industrial Insurance Appeals of the April 1, 2009 order. On June 2, 2009, the Department corrected and superseded the April 1, 2009 order, terminated time-loss compensation benefits as paid through August 20, 2007, found the claimant totally and permanently disabled as a result of the conditions covered under Claim Nos. X-097249 and P-559303, and placed the claimant on a pension effective May 16, 2009, with the pension to be administered under Claim No. X-097249, and with no medical treatment covered after the effective date of the pension.

2. **Claim No. X-097249** [back injury and mental health conditions]: . . . On May 22, 2009, the claimant filed an appeal of the April 1, 2009 order with the Board of Industrial Insurance Appeals and on June 2, 2009, the Department corrected and superseded the April 1, 2009 order, terminated time-loss compensation benefits as paid through May 15, 2009, found the claimant totally and permanently disabled as a result of the conditions covered under Claim Nos. X-097249 and P-559303, and placed the claimant on a pension effective May 16, 2009, with the pension to be administered under Claim No. X-097249.

. . . .

9. As of May 16, 2009, Mr. Stone was permanently unable to engage in reasonably continuous gainful employment as a proximate result of the March 31, 1997 and April 6, 2001 industrial injuries.

10. There was no proof that Mr. Stone was permanently unable to engage in reasonably continuous gainful employment as a proximate result of the April 6, 2001 industrial injury alone,

---

[10] Clerk's Papers at 71.

without taking into consideration the effects of the March 1, 1997 industrial injury.[11]

¶13 These unchallenged findings show that Stone received a pension based on the combined effects of two separate industrial injuries. This fact is crucial to a proper application of the relevant statutes.

¶14 Under the IIA, an injured worker may receive two types of benefits for permanent disabilities: (1) permanent partial disability and (2) permanent total disability. A "permanent partial disability" (PPD) includes loss of some bodily function and "any other injury known in surgery to be permanent partial disability."[12] PPD benefits are often referred to as a "lump-sum" award because it is a one-time award of a statutorily defined value.[13]

¶15 A "permanent total disability" (PTD) means "loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation."[14] PTD benefits are often referred to as "pension" benefits because they constitute a monthly wage replacement.[15]

¶16 These two types of benefits are " 'separate concepts.' "[16] Whether DLI awards a PTD pension depends on whether the worker is able to return to "gainful employment,"[17] while a PPD award is given "on the basis of loss of

---

[11] Certified Appeal Board Record at 4-6.

[12] RCW 51.08.150.

[13] See RCW 51.32.080; Brief of Respondent at 1.

[14] RCW 51.08.160.

[15] See RCW 51.32.060.

[16] McIndoe v. Dep't of Labor & Indus., 144 Wn.2d 252, 262, 26 P.3d 903 (2001) (quoting Ellis v. Dep't of Labor & Indus., 88 Wn.2d 844, 851, 567 P.2d 224 (1977)).

[17] Id.

bodily function."[18] Two workers who have the same "loss of bodily function" are entitled to the same PPD award but may be entitled to different PTD pensions depending on the type of work.[19]

¶17 Stone primarily argues that he is entitled to a PPD award for his first industrial injury, notwithstanding his pension award for his second injury. In doing so, he relies primarily on RCW 51.32.060(4). That statute provides:

> Should any further accident result in the **permanent total disability** of an injured worker, he or she shall receive the pension to which he or she would be entitled, **notwithstanding the payment of a lump sum for his or her prior injury**.[20]

In this case of first impression, Stone's reliance on this statute, without considering any other relevant authority, is misplaced.

¶18 In *McIndoe v. Department of Labor & Industries*, the supreme court interpreted the meaning of "prior injury" within this statutory framework of the IIA.[21] The court held that a worker who received a PTD pension could also receive a PPD award for a "prior injury" that "preexisted" and was "*unrelated* to the worker's permanent total disability condition . . . ."[22] Thus, both a "prior injury" and one that is "unrelated" to the permanent disability are required.

¶19 It is not clear from the court's holding in *McIndoe* whether a worker can receive a PPD award for a "prior injury" that is *related* to the award of PTD pension. We could find no published case that addresses this issue of first impression.

---

[18] *Id.*

[19] *Id.*

[20] (Emphasis added.)

[21] 144 Wn.2d 252, 263-64, 26 P.3d 903 (2001).

[22] *Id.* at 266 (emphasis added).

¶20 Turning to the BIIA's decision and order, we note that it relied on former RCW 51.32.080(4) (2007) for its legal conclusion that Stone was not entitled to a PPD award in addition to the pension he received for his PTD. Its reasoning appears to be based on the rationale that permitting this would allow a double recovery for the same injury. That is because his PTD pension was based, in part, on his preexisting knee injury.

¶21 We agree that RCW 51.32.060(4) must be considered with former RCW 51.32.080(4) (2007).[23] As we previously explained, RCW 51.32.060 addresses PTD pensions and RCW 51.32.080 addresses PPD awards. For PPD awards, former RCW 51.32.080(4) (2007) provided:

> If permanent partial disability compensation is followed by permanent total disability compensation, any portion of the permanent partial disability compensation which exceeds the amount that would have been paid the injured worker if permanent total disability compensation had been paid in the first instance shall be, at the choosing of the injured worker, either: (a) **Deducted** from the worker's monthly pension benefits in an amount not to exceed twenty-five percent of the monthly amount due from the department or self-insurer or one-sixth of the total overpayment, whichever is less; or (b) **deducted** from the pension reserve of such injured worker and his or her monthly compensation payments shall be reduced accordingly.[24]

¶22 In *McIndoe*, the supreme court explained, albeit in dicta, how these two provisions affect one another.[25] There, DLI argued that allowing PPD awards for prior, unrelated injuries "would lead to the highly anomalous result that every totally disabled worker could also claim full perma-

---

[23] This version of the statute was in effect at the time of the BIIA decision. The legislature subsequently amended this statute, effective July 1, 2011.

[24] (Emphasis added.)

[25] 144 Wn.2d at 263.

nent partial disability benefits for that functional loss."[26] The court explained that DLI's argument was not persuasive because of former RCW 51.32.080(4) (2007).[27] This provision requires that "if an injury that was originally classified as partially disabling is later determined to cause permanent total disability, earlier payments are recouped by adjusting the pension."[28] Thus, former RCW 51.32-.080(4) (2007) prevents workers from receiving two different benefits for the same injury.

¶23 The rationale behind former RCW 51.32.080(4) (2007) is found in *Stuckey v. Department of Labor & Industries.*[29] There, the supreme court explained that this provision ensures that "injured workers who first receive permanent partial disability awards and later receive total disability pensions do not receive greater benefits than workers who endure permanent total disabilities in the first instance."[30]

¶24 Here, Stone asks this court to overturn the superior court's decision affirming DLI's orders that found him "totally and permanently disabled as a result of the [combined] effects of the conditions covered under [the back injury and mental health claim] and [the knee injury claim]." He seeks an award of a PPD benefit for his prior knee injury in addition to his PTD pension. This request is contrary to the rationale that underlies former RCW 51.32.080(4) (2007) and the cases that have construed this statute. In essence, he seeks a greater benefit to which he is not entitled.

¶25 According to the plain language of former RCW 51.32.080(4) (2007) and the supreme court's discussion in

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] 129 Wn.2d 289, 296, 916 P.2d 399 (1996).

[30] *Id.*

*McIndoe* and *Stuckey*, if Stone received a PPD award, it would be deducted or recouped from his PTD pension. That is because his original knee injury was determined to be one of the combined effects for his PTD award. There is no reason to believe that DLI should go through the meaningless task of awarding a PPD benefit only to deduct it from the PTD pension. In sum, Stone is not entitled to a PPD award under the circumstances of this case.

¶26 The State also argues that the legislature's 2011 amendment to RCW 51.32.080(4) supports this conclusion. It contends that the amendment clarifies that if a worker is permanently and totally disabled as a result of the combined effects of multiple claims, the worker is not eligible for a further PPD award for any of the claims that proximately caused the worker's PTD. Because we have resolved this case on the basis of former RCW 51.32.080(4) (2007) and preamendment supreme court case authority, we need not address this argument.

¶27 Stone relies on *Clauson v. Department of Labor & Industries* to advance his argument.[31] That reliance is misplaced.

¶28 There, the worker injured his right hip, and DLI gave him a PPD award equal to 35 percent of the amputation value of the right leg.[32] Later, Clauson injured his lower back and left hip.[33] Based on this second injury, DLI placed Clauson on a PTD pension.[34] Meanwhile, DLI reopened Clauson's first claim so he could obtain additional medical treatment for his first injury.[35] At that point, DLI determined that Clauson suffered a 60 percent PPD for this

---

[31] 130 Wn.2d 580, 925 P.2d 624 (1996).

[32] *Id.* at 582.

[33] *Id.*

[34] *Id.*

[35] *Id.*

first injury.[36] DLI closed the first claim without making an increased PPD award.[37] The court held that Clauson should have received an additional PPD award for his first injury.[38]

¶29 The court explained that Clauson was seeking a PPD award "for an injury which was sustained *before* the injury resulting in his permanent total disability and which was considered under a separate claim, *which was pending at the time he was classified as permanently totally disabled.*"[39]

¶30 As DLI points out, implicit in this holding is the fact that Clauson's first injury was unrelated to his second injury, and that his second injury was the basis for the award of a PTD pension. Clauson was entitled to a PPD award and a PTD pension because his two injuries were unrelated. This material fact distinguishes that case from this one.

¶31 In *McIndoe*, the supreme court made this factual distinction explicit.[40] There, three workers sustained injuries that DLI determined were permanently and totally disabling.[41] Later, they discovered they suffered hearing loss before they were put on PTD pensions.[42] DLI only allowed benefits for medical treatment and did not make a separate PPD award for the workers' hearing loss.[43] As discussed above, the court held that "a worker may receive permanent partial disability benefits for a valid occupational injury or disease claim that preexisted and is *unre-*

---

[36] *Id.* at 583.

[37] *Id.*

[38] *Id.* at 586.

[39] *Id.*

[40] *See* 144 Wn.2d at 266.

[41] *Id.* at 254-55.

[42] *Id.*

[43] *Id.*

*lated* to the worker's permanent total disability condition."[44] The court stressed the fact that the injuries were **unrelated** multiple times throughout the opinion.[45]

¶32 Here, Stone suffered two separate injuries under two separate claims. But DLI's determination that Stone should be placed on PTD pension rolls was based on the combined effects of both of his injuries, and thus the injuries were related. This finding is a verity on appeal in this case.[46] Stone may not receive a PPD award in addition to his PTD pension under *Clauson* and *McIndoe* because the PTD determination was based on both injuries.[47]

¶33 We note that our decision is consistent with significant decisions of the BIIA. The BIIA designates and publishes certain decisions as "significant decisions."[48] It is appropriate for this court to consider the BIIA's interpretation of the laws it is charged with enforcing, in addition to relevant case law.[49] We may consider these decisions as persuasive but not binding authority.[50]

¶34 In BIIA's significant decisions *In re Lusk*[51] and *In re Maupin*,[52] Lusk and Maupin both sustained two separate injuries. DLI determined that both workers were permanently and totally disabled because of the combined effects

---

[44] *Id.* at 266 (emphasis added).

[45] *Id.* at 254, 256, 257, 262, 263, 266.

[46] *See Pellino*, 164 Wn. App. at 682.

[47] *See Clauson*, 130 Wn.2d at 586; *McIndoe*, 144 Wn.2d at 266.

[48] RCW 51.52.160.

[49] *Rogers*, 151 Wn. App. at 183 n.10.

[50] *See Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d 629 (1991).

[51] Nos. 89 2984 and 89 3984, 1991 WA Wrk. Comp. LEXIS 60 (Wash. Bd. of Indus. Ins. Appeals June 14, 1991).

[52] Nos. 04 14768, 04 15995, 04 18789, 04 18989, 04 20797, and 04 21093, 2005 WA Wrk. Comp. LEXIS 246 (Wash. Bd. of Indus. Ins. Appeals Dec. 6, 2005).

of their two injuries.[53] In *Lusk*, the BIIA explained that a worker cannot seek a PPD award in addition to a PTD pension: "To do so would compensate the injured worker twice for the same impairment."[54] In *Maupin*, the BIIA held that the industrial appeals judge erred in basing its decision on the supreme court's holding in *Clauson* because the judge should have relied on *Lusk*.[55] The BIIA noted that like *Clauson*, there were "two separate injuries and two separate claims."[56] But in *Clauson*, "the worker was permanently totally disabled as a result of one injury, entirely independent of the other," which is why the worker was able to receive a PPD award for one injury and a PTD pension for the other.[57]

¶35 Here, the facts of *Lusk* and *Maupin* are similar to the present case. In these cases, the BIIA found that a worker could not receive a PPD award for an injury when the basis of a PTD pension is that same injury and another injury. The BIIA has been consistent in its decisions regarding this issue, and these decisions align with the Washington courts' decisions.

¶36 Stone contends that *In re Sulgrove*,[58] another significant decision of the BIIA, supports his position. It does not.

¶37 In *Sulgrove*, a worker sustained an injury and was placed on a PTD pension for this injury.[59] He later filed a

---

[53] *Maupin*, 2005 WA Wrk. Comp. LEXIS 246, at *3; *Lusk*, 1991 WA Wrk. Comp. LEXIS 60.

[54] *Lusk*, 1991 WA Wrk. Comp. LEXIS 60.

[55] *Maupin*, 2005 WA Wrk. Comp. LEXIS 246, at *5.

[56] *Id.*

[57] *Id.*

[58] No. 88 0869, 1989 WA Wrk. Comp. LEXIS 22 (Wash. Bd. of Indus. Ins. Appeals May 1, 1989).

[59] *Id.*

claim for an asbestos-related condition.[60] The BIIA concluded that Sulgrove might be able to receive a PPD award for this separate condition if it was "fixed and stable" before he was placed on a PTD pension because "[t]here would be no 'double payment' or 'overlapping of classifications . . . .' "[61] But this case, as in *Lusk*, is "substantially different" from the facts in *Sulgrove*.[62] In contrast to *Sulgrove*, Stone was placed on a PTD pension because of the combined effects of two injuries. Sulgrove was placed on a PTD pension because of one injury. Thus, *Sulgrove* is factually distinguishable from this case.

¶38 Stone also argues that *Sulgrove* emphasized that a worker should not be penalized for administrative delay. He asserts that DLI should have closed his knee claim and awarded him a PPD award because he had reached "maximum medical improvement" as early as August 2007. But while administrative delay was a factor in *Sulgrove*, the decision was primarily based on the fact that the injuries were unrelated.[63] Thus, this factor does not control the outcome of this case.

¶39 Next, Stone contends that DLI consolidated his right knee injury and lower back injury into "a single injury," and "[n]owhere in the Act or appellate case law is the Department granted the authority to 'reclassify' conditions or disabilities into a single injury." This argument is a mischaracterization of DLI's orders. DLI decided that Stone was permanently and totally disabled as a result of both injuries. DLI did not conclude that Stone suffered only one injury.

¶40 Stone next argues that the "logical extrapolation" for the requirement that the injuries must be unrelated is that DLI could decide that most subsequent injuries are related

---

[60] *Id.*

[61] *Id.*

[62] *Lusk*, 1991 WA Wrk. Comp. LEXIS 60.

[63] 1989 WA Wrk. Comp. LEXIS 22.

to the original injury. Thus, "scores of workers should return their PPD awards to the Department in the event they are later found totally permanently disabled." Stone cites *Wendt v. Department of Labor & Industries*[64] and *Fochtman v. Department of Labor & Industries*,[65] which state that DLI *"must* consider the worker as a whole person with all pre-existing disabilities and infirmities together with the industrial injury" when determining whether a worker is permanently and totally disabled.[66] But requiring DLI to consider the whole worker does not necessarily mean that DLI must decide that all injuries are related. In each case, DLI will have to determine whether one injury caused the worker to be permanently and totally disabled or if multiple injuries caused this result.

¶41 Finally, Stone argues that he is entitled to an award because of the liberal interpretation of the IIA. It is true that we resolve doubts in favor of the worker when construing the IIA.[67] " 'But it is fundamental that, when the intent of the legislature is clear from a reading of a statute, there is no room for construction.' "[68] Here, the statutory language is clear. Thus, the liberal construction doctrine does not apply under the circumstances here.

¶42 In sum, we conclude that under chapter 51.32 RCW, Stone cannot receive a PPD award for his preexisting knee injury because his PTD pension was based on the combined effects of that same knee injury and a subsequent injury.

---

[64] 18 Wn. App. 674, 682-83, 571 P.2d 229 (1977).

[65] 7 Wn. App. 286, 295, 499 P.2d 255 (1972).

[66] Brief of Appellant at 20.

[67] *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

[68] *Elliott v. Dep't of Labor & Indus.*, 151 Wn. App. 442, 450, 213 P.3d 44 (2009) (quoting *Johnson v. Dep't of Labor & Indus.*, 33 Wn.2d 399, 402, 205 P.2d 896 (1949)).

## ATTORNEY FEES

 ¶43 Stone requests attorney fees and costs on appeal under RCW 51.52.130 and RAP 18.1. RCW 51.52.130 provides, in pertinent part:

> If, on appeal to the superior or appellate court from the decision and order of the board . . . a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.

¶44 Here, Stone does not prevail in his appeal. Accordingly, he is not entitled to an award of fees.

¶45 We affirm the decision of the superior court affirming the decision of the BIIA.

LEACH, C.J., and SPEARMAN, J., concur.

Reconsideration denied February 8, 2013.