IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ASLI M. ALI,<br><br>     Appellant,<br><br>    v.<br><br>DEPARTMENT OF LABOR AND<br>INDUSTRIES,<br><br>     Respondent. | No. 83747-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Asli Ali appeals a superior court order affirming a Board of Industrial Insurance Appeals (Board) decision concerning her reopened workers' compensation claim. The Board affirmed a total of eleven orders of the Department of Labor and Industries (Department) denying Ali's requests for additional compensation and reclosing her claim. Ali primarily asserts that the Board erroneously discredited her treating physicians' testimony and that the Department's independent medical examiners acted in bad faith. But substantial evidence supports the superior court's decision. We affirm.

FACTS

On October 21, 2005, Ali was injured while working at Hertz Corporation. The accident occurred when she inadvertently backed a rental car into a wall. Ali was treated at an emergency room and discharged without being admitted to the hospital. She was 32 years old at the time of the incident.

In November 2005, the Department allowed Ali's claim for this injury and awarded workers' compensation benefits for cervical and lumbar sprain/strain, contusion of the abdominal wall, and depression. In July 2008, the Department affirmed its decision denying responsibility for Ali's claim for fibromyalgia. In June 2009, the Department determined that treatment was no longer necessary and closed her claim.

In February 2010, Ali filed a series of applications to reopen her claim. She asked the Department to accept responsibility for left and right shoulder sprain/strain, right carpal tunnel syndrome, cervical disc disorder at C4-C5 and C5-C6 levels, and fibromyalgia. She also sought time-loss compensation benefits during various periods between February 2010 and June 2019 and payment for a June 1, 2019 medical service.

In December 2017, the Board granted Ali's reopening application because the Department had failed to respond to her first application within the 90-day statutory time limitation period.[1] The Department reopened Ali's claim with an effective reopening date of February 5, 2010.

In June 2018, at the direction of the Department, Ali participated in independent medical examinations (IMEs) with neurologist Dr. Rodney Johnson, orthopedic surgeon Dr. Duane Hopp, and psychiatrist Dr. Jeralyn Jones. Based on the examining doctors' findings and conclusions, the Department issued a series of eleven orders in 2018 and 2019 denying responsibility for Ali's claimed

---

[1] See RCW 51.32.160(1)(d) ("If an order denying an application to reopen . . . is not issued within ninety days of receipt of such application by . . . the department, such application shall be deemed granted.")

conditions, denying her request for additional time-loss compensation benefits, denying her medical service payment request, and re-closing her claim without an award for permanent disability.

Ali appealed these orders to the Board. Her evidence consisted solely of her own testimony and the deposition testimony of two of her treating physicians, Dr. Chang Shin and Dr. John Yuen.

Dr. Shin practices neurology and pain management. He has been treating Ali since 2007. Dr. Shin diagnosed Ali with fibromyalgia, cervical disc disease, bilateral shoulder sprains/strains, post-traumatic stress disorder (PTSD), and mild right carpal tunnel syndrome. Dr. Shin believed Ali was in severe pain and opined that her work-related conditions rendered her unable to work during the periods of time at issue in her appeals. Dr. Shin asserted that because he has "very sensitive hands," it would be "almost impossible" for Ali to fake her pain to him.

Dr. Yuen practices rheumatology and allergy/immunology. He started treating Ali around 2013. Dr. Yuen diagnosed Ali with fibromyalgia, chronic musculoskeletal pain, degenerative disc disease, and depression. Dr. Yuen opined that Ali was not fabricating her symptoms and that she was not capable of doing any kind of work.

Ali testified that she is still suffering and that she probably would not be alive today were it not for Dr. Shin and Dr. Yuen. She said she cries all the time and has not tried to return to work since the accident because she is unable to

3

care for herself. She denied having any of these pains, or any emotional or psychological issues, before the industrial injury.

The Department presented the deposition testimony of Dr. Johnson, Dr. Hopp, and Dr. Jones. All three doctors testified that Ali's claim-related conditions required no further treatment, she was not temporarily totally disabled, she had no compensable permanent impairment, and she was capable of returning to work.

On January 14, 2021, following the hearing, the industrial appeals judge (IAJ) issued a proposed decision and order affirming the Department's orders. The IAJ determined that Ali's right carpal tunnel syndrome, left and right shoulder sprain/strain, C4-5 and C5-6 cervical disc disorder, and fibromyalgia were not proximately caused or aggravated by her industrial injury and that she does not need further medical treatment. The IAJ further determined that Ali was not entitled to time-loss compensation benefits because of residual impairments proximately caused by her industrial injury, nor was she permanently partially or totally disabled. Ali petitioned the Board for review and, on April 26, 2021, the Board affirmed the Department's orders.

Ali appealed the Board's decision to superior court. There, she filed hundreds of pages of documents that she had not provided to the Board. After noting that its review was limited to the record before the Board, the superior court ruled that Ali had not shown by a preponderance of the evidence that the Board's decision was incorrect. The superior court adopted the Board's findings of fact and conclusions of law as its own and entered its own additional findings

4

and conclusions.

Ali appealed.

ANALYSIS

Standard of Review

The Industrial Insurance Act (IIA), Title 51 RCW, governs judicial review of workers' compensation determinations. Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009). A worker aggrieved by the decision and order of the Board may appeal to the superior court. RCW 51.52.110. The superior court conducts a de novo review of the Board's decision, based only on the administrative record and evidence presented to the Board. RCW 51.52.115; Butson v. Dep't of Labor & Indus., 189 Wn. App. 288, 295, 354 P.3d 924 (2015). The Board's decision is considered prima facie correct and the opposing party must support its challenge by a preponderance of the evidence. RCW 51.52.115; Eastwood v. Dep't of Labor & Indus., 152 Wn. App. 652, 657, 219 P.3d 711 (2009).

We review the decision of the superior court rather than the decision of the Board. Birgen v. Dep't of Labor and Indus., 186 Wn. App. 851, 856, 347 P.3d 503 (2015). The superior court's decision is subject to the ordinary standard of review for civil appeals. RCW 51.52.140; Malang v. Dep't of Labor & Indus., 139 Wn. App. 677, 683, 162 P.3d 450 (2007). We determine " 'whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings.' " Rogers, 151 Wn. App. at 180, 210 P.3d 355 (quoting Watson v. Dep't of Labor & Indus., 133

Wn. App. 903, 909, 138 P.3d 177 (2006)). Substantial evidence is evidence " 'sufficient to persuade a fair-minded, rational person of the truth of the matter.' " Potter v. Dep't of Labor & Indus., 172 Wn. App. 301, 310, 289 P.3d 727 (2012) (quoting R & G Probst v. Dep't of Labor & Indus., 121 Wn. App. 288, 293, 88 P.3d 413, (2004)). We review the record in the light most favorable to the party who prevailed in superior court. Robinson v. Dep't of Labor & Indus., 181 Wn. App. 415, 425, 326 P.3d 744 (2014). "Credibility determinations are solely for the trier of fact and cannot be reviewed on appeal." Watson, 133 Wn. App. at 909. Ali did not assign error to any of the superior court's findings of fact, so they are verities on appeal.[2] Stone v. Dep't of Labor & Indus., 172 Wn. App. 256, 260, 289 P.3d 720 (2012).

Workers' Compensation Benefits

Under the IIA, a worker injured in the course of employment is entitled to compensation. RCW 51.32.010; Tobin v. Dep't. of Labor & Indus., 145 Wn. App. 607, 613, 187 P.3d 780 (2008). After an industrial injury, a worker covered by industrial insurance is entitled to necessary and proper medical and surgical services during the period of disability caused by the injury. RCW 51.36.010(2)(a). A worker with a "temporary total disability" receives "time loss" benefits as a wage replacement benefit while the worker is temporarily incapacitated from performing work at gainful employment. RCW 51.32.090; Hubbard v. Dep't of Labor & Indus., 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). A

---

[2] A pro se litigant is bound by the same rules of procedure and substantive law as a licensed attorney. Holder v. City of Vancouver, 136 Wn. App. 104, 106 P.3d 641 (2006).

worker with a permanent partial disability receives a one-time award of benefits based on the loss of function, whereas permanent total disability payments are wage replacement benefits. RCW 51.32.080; RCW 51.32.060(1); Boeing Co. v. Doss, 183 Wn.2d 54, 60, 347 P.3d 1083 (2015).

A worker may apply to the Department to reopen an earlier workers' compensation claim due to aggravation or worsening of his or her industrial injury. RCW 51.32.160(1)(a). "Long-standing case law requires the worker to prove aggravation by presenting medical testimony that establishes a causal connection 'between the injury and the subsequent disability' based on 'some objective medical evidence' that the injury 'has worsened since the initial closure of the claim.' "[3] Ma'ae v. Dep't. of Labor and Indus., 8 Wn. App. 2d 189, 200-01, 438 P.3d 148 (2019) (internal quotation marks omitted) (quoting Eastwood, 152 Wn. App. at 656-57).

Here, substantial evidence supports the superior court's findings that Ali's industrial injury did not cause or aggravate her contended conditions and that she was able to perform gainful employment during the periods she sought additional time-loss compensation. Dr. Johnson testified that "there was no evidence of any bona fide physiologic" abnormality at the time of the independent medical examination and that Ali reached maximum medical improvement long

---

[3] WAC 296-20-220(1)(i) defines "objective physical or clinical findings" as "those findings on examination which are independent of voluntary action and can be seen, felt, or consistently measured by examiners." In contrast, WAC 296-20-220(1)(j) defines "subjective complaints or symptoms" as "those perceived only by the senses and feelings of the person being examined which cannot be independently proved or established."

ago. As to fibromyalgia, all three doctors testified that fibromyalgia would not be causally related to Ali's industrial injury. In particular, Dr. Hopp testified that there is "no scientific association of fibromyalgia being caused by trauma." As to bilateral shoulder strains/sprains, Dr. Johnson and Dr. Hopp testified that there were no findings supporting that diagnosis and that the claimed condition was not consistent with her mechanism of injury. As to the cervical disc disorder, Dr. Johnson and Dr. Hopp explained that Ali's MRI scans and physical findings were common, would not cause any symptoms, and did not represent an injury finding. Dr. Johnson testified that Ali's nerve test suggested one minimally abnormal value, but "everything else was normal with respect to carpal tunnel" and "there's no biological mechanism for carpal tunnel to have occurred as a result of this injury." And Dr. Jones testified that nothing in Ali's presentation or records supported a PTSD diagnosis.

Similarly, as to time-loss compensation, Dr. Johnson and Dr. Hopp testified that Ali was not temporarily totally disabled during the claimed period given the time that had transpired since the injury and the lack of objective physical or neurological findings showing she was incapable of employment without restrictions. And Dr. Jones testified that, from a psychiatric perspective, depression would not render Ali incapable of working given that "many people work full-time jobs when they are being treated for depression" and that working can actually be "quite helpful."

Ali does not challenge any of the superior court's findings of fact or argue that the superior court's decision was not supported by substantial evidence.

She contends that her treating physicians' testimony should have been given greater weight than that of the physicians who conducted the IMEs. Ali's argument implicates the "attending physician" doctrine, under which the trier of fact should give "special consideration" to the opinion of the claimant's treating physician in worker's compensation cases. Hamilton v. Dep't of Labor & Indus., 111 Wn.2d 569, 571, 761 P.2d 618 (1988). This doctrine does not require the trier of fact to "give more weight or credibility to the attending physician's testimony" but rather to give it "careful thought." Hamilton, 111 Wn.2d at 571. And a factfinder need not disregard testimony that contradicts that of an attending physician. See Chalmers v. Dep't of Labor & Indus., 72 Wn.2d 595, 599, 434 P.2d 720 (1967) (treating physician's opinion, which was contradicted by substantial evidence, insufficient to establish causation).

The record supports the superior court's finding that the Board did not unduly defer to the opinions of the IME physicians. Unlike Ali's treating physicians, who relied largely on her subjective reporting, the IME physicians reached their conclusions after reviewing the entirety of Ali's available medical records in addition to conducting in-person interviews and examinations. The record also supports the superior court's finding that the IME physicians "justified their diagnoses more cogently, or with better authority, than the treating physicians." Notably, neither of the treating physicians specialized in psychiatry; the IME physicians offered unrebutted testimony that Ali's industrial injury could not have caused fibromyalgia; and the treating physicians were unable to explain how pain from Ali's mild cervical protrusions or mild carpal tunnel findings could

be as severe as Ali claimed or could have persisted more than a decade after the accident. The record amply demonstrates that the finder of fact properly gave "careful thought" to the treating physicians' opinions. And this court will not revisit credibility determinations on appeal. Watson, 133 Wn. App. at 909.

### Bad Faith

Ali further argues that the IME physicians and the Board acted in bad faith by misleading the superior court with respect to their testimony and overlooking documented evidence. But the record shows that the IME physicians reached their opinions and conclusions after interviewing and examining Ali and thoroughly reviewing her available medical records. A party must produce sufficient evidence demonstrating actual or potential bias; "mere speculation is not enough." Magula v. Dep't of Labor & Indus., 116 Wn. App. 966, 972, 69 P.3d 354 (2003). Ali has not met her burden to show evidence of actual or potential bias in support of her claim. And the superior court properly disregarded documents and medical records not offered to the Board. See RCW 51.52.115 (superior court relies on the certified board record).

Affirmed.

Smith, C.J.

WE CONCUR:

Birk, J.                    Coburn, J.