[No. 65403-9-I.   Division One.   October 24, 2011.]

Dakarai Pearson, *Respondent*, v. The Department of Labor and Industries, *Appellant*.

428

*Robert M. McKenna, Attorney General*, and *Eric D. Peterson, Assistant*, for appellant.

*William D. Hochberg* and *Amie C. Peters* (of *Law Office of Bill Hochberg*), for respondent.

¶1 Cox, J.—In order to obtain appellate relief from an order of the Department of Labor and Industries (DLI), an aggrieved worker must appeal to the Board of Industrial Insurance Appeals (BIIA) within 60 days from the day on which a copy of the order is communicated to the worker.[1] This deadline may not be extended by the courts except in narrowly defined circumstances.[2]

¶2 Here, Dakarai Pearson failed to timely appeal the DLI's wage rate order within 60 days from the date it was

---

[1] RCW 51.52.050(1), .060(1)(a).

[2] *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 937 P.2d 565 (1997).

communicated to him. This record fails to show that he was either diligent in seeking relief or that any of the narrowly defined circumstances that permit relief apply. Accordingly, we reverse the superior court's summary judgment order granting him relief pursuant to Court Rule (CR) 60(b)(1) and (11) and remand with directions.

¶3 The material facts are undisputed. Pearson filed a worker's compensation claim with the DLI after he suffered an injury while playing defensive back for the Everett Hawks football team. The DLI issued an order setting Pearson's wage rate at the time of this industrial injury without including the amounts of his employer-provided housing and board. Pearson timely protested that order and the DLI performed additional investigation of his claim.

¶4 The DLI issued a new wage rate order dated December 12, 2006, that did not include any provisions for Pearson's housing and board. The order stated that Pearson was required by statute to appeal within 60 days. He failed to do so. Instead, he generally protested to the DLI on March 8, 2007. A specific protest of the wage rate order followed on March 19, 2007. On August 29, 2007, the DLI issued an order declining to reconsider its December 12, 2006, order. On October 15, 2007, Pearson timely appealed the DLI's August 29 order to the BIIA.

¶5 At a hearing before an Industrial Appeals Judge (IAJ), Pearson stipulated that he received the DLI's December 12, 2006 order on December 15, 2006, and that he read it in its entirety. The IAJ rejected Pearson's claim in a proposed decision and order. The BIIA agreed, rejecting Pearson's challenge as an untimely appeal of the DLI's December 12, 2006 order.

¶6 Pearson timely appealed the BIIA's decision and order to the superior court. Both he and the DLI moved for summary judgment. The superior court granted Pearson's motion, relying in its oral ruling on equitable grounds. Thereafter, the parties could not agree on the form of the order that would reflect the court's ruling. After considering

conflicting proposed orders from the parties and hearing additional argument, the court entered its summary judgment order in favor of Pearson based on CR 60(b)(1) and (11).

¶7 The DLI appeals.

## RELIEF FROM UNTIMELY APPEAL OF DEPARTMENT ORDER

¶8 The DLI argues that the superior court erroneously granted summary judgment to Pearson. Moreover, it claims that it is entitled to summary judgment because allowing Pearson relief from his untimely appeal of the DLI order dated December 12, 2006, would be incorrect. We agree.

¶9 A motion for summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[3] We review de novo a lower court's order granting summary judgment, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

¶10 Here, as the parties correctly concede, there are no genuine issues of material fact.[5] The parties stipulated that the DLI order dated December 12, 2006, was communicated to Pearson on December 15, 2006. It is undisputed that he failed to appeal that order within 60 days. Moreover, he did not protest or request reconsideration until March 2007.

¶11 The main issue is legal: whether Pearson is entitled to judgment as a matter of law. Specifically, is Pearson entitled to relief under CR 60(b)(1) or (11), on which the superior court relied in its summary judgment order?

---

[3] CR 56(c).

[4] *Khung Thi Lam v. Global Med. Sys., Inc.*, 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005).

[5] Appellant's Brief at 14; Respondent's Brief at 12.

*CR 60(b)*

¶12  CR 60(b) states, in pertinent part:

**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time and *for reasons (1)*, (2) or (3) *not more than 1 year after the* judgment, *order*, or proceeding was entered or taken.[6]

¶13  The issue here is whether this rule applies to untimely challenges to DLI orders. We conclude that it does not.

■  ¶14  Washington's Industrial Insurance Act provides injured workers a swift, certain, no fault remedy that is primarily enforced in an administrative process that the act establishes.[7] The act generally provides finality to decisions of the DLI.[8]

■  ¶15  The time for appeal of a DLI order is specified in RCW 51.52.060(1)(a):

[A] worker . . . aggrieved by an order . . . must, before he or she appeals to the courts, file with the board and the director, by mail or personally, *within sixty days from the day on which*

---

[6] (Emphasis added.)

[7] *Kingery*, 132 Wn.2d at 168-69.

[8] *Id.* at 170.

> *a copy of the order . . . was communicated to such person*,
> a notice of appeal to the board.[9]

If a worker fails to appeal within the 60 day time limit, the claim is deemed *"res judicata* on the issues the order encompassed, and '[t]he failure to appeal an order . . . turns the order into a final adjudication, precluding any reargument . . . .' "[10]

¶16 The supreme court considered what remedies are available to a claimant who makes an untimely appeal from a DLI order in *Kingery v. Department of Labor & Industries.*[11] In that case, Willard Kingery died at work while operating a road grader.[12] He was found at the worksite under one of the wheels of the grader with massive head, neck, and chest injuries.[13] Marie Kingery, his widow, filed her initial claim for widow's benefits nine days after her husband's death.[14] Shortly thereafter, the physician who performed an autopsy concluded in his report that Mr. Kingery died of a heart attack, followed by postmortem injuries when he fell out of the grader and landed under one of its wheels.[15] The DLI rejected the widow's claim because her husband died of natural causes, not an industrial injury.[16] The DLI order denying benefits included a notice that she had 60 days to appeal.[17]

---

[9] (Emphasis added.)

[10] *Kustura v. Dep't of Labor & Indus.*, 142 Wn. App. 655, 669, 175 P.3d 1117 (2008) (first alteration in original) (footnote omitted) (quoting *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 538, 886 P.2d 189 (1994)).

[11] 132 Wn.2d 162, 937 P.2d 565 (1997).

[12] *Id.* at 165.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 165-66.

[17] *Id.* at 166.

¶17 She filed a timely request for reconsideration of the DLI's initial order.[18] The DLI issued an order affirming its earlier order denying the claim.[19] This order also included a notice that she had 60 days to appeal.[20]

¶18 She did not appeal this DLI order within 60 days.[21] She did not request any further action of the DLI until November 1991, eight years later.[22] Her latest request was based on obtaining new information that her husband did not die of a heart attack, but rather from head, neck, and chest injuries after his fall.[23]

¶19 The DLI denied reconsideration of its 1983 denial order for lack of jurisdiction based on the failure to timely appeal.[24] Kingery appealed to the BIIA.[25] In a proposed decision and order, an IAJ concluded that neither the DLI nor the BIIA had subject matter jurisdiction because the DLI's 1983 order was final and binding.[26] The proposed decision and order also noted that there was no jurisdiction because the appeal was brought beyond the one-year time limitation imposed by CR 60(b)(3), which deals with "newly discovered evidence."[27] The BIIA rejected Kingery's claim on appeal that CR 60(b)(3), (b)(11), or (c) provided any basis for relief from the 60-day time limitation to appeal the DLI's 1983 order.[28]

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 167.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 167-68.

[28] *Id.* at 168.

¶20 On timely appeal to the superior court of the BIIA decision, both Kingery and the DLI moved for summary judgment.[29] She claimed that either CR 60(b)(11) or (c) provided a basis for relief.[30] The superior court granted Kingery's motion, denied the DLI's motion, and vacated the DLI's 1983 order denying the claim.[31]

¶21 The court of appeals reversed the trial court order, and the supreme court granted review.[32]

¶22 The four justices who signed the lead opinion agreed that

> [t]he Board and the courts do have authority under the Act to reconsider decisions *properly appealed* by one of the parties. . . . Had Mrs. Kingery timely appealed the Department order . . . she could have pursued a CR 60 remedy before the Board . . . . But she did not appeal and her failure to do so precludes her from seeking relief under Title 51 RCW; she cannot evade her responsibility under Title 51 RCW to appeal from a Department order that aggrieved her.[33]

After rejecting the use of CR 60 to extend the time for an untimely appeal of a DLI order, the lead opinion went on to explore the equitable power of Washington courts to set aside DLI orders. In describing the limited scope of equitable relief, the lead opinion concluded that "[k]ey to the application of equitable principles . . . are two elements: the claimant's competency to understand the content of the order and the appellate process, . . . and some misconduct on the part of the Department in communicating its order to the claimant."[34]

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 172 (some emphasis added).

[34] *Id.* at 174.

¶23 The lead opinion cited and discussed two of the court's prior opinions, *Ames v. Department of Labor & Industries*[35] and *Rodriguez v. Department of Labor & Industries*.[36] *Ames* involved a claimant who was insane and without a guardian during the time to appeal.[37] The DLI knew of this incapacity.[38] The court concluded that extension of the time to appeal under these circumstances was a proper exercise of a court's equitable power.[39]

¶24 In *Rodriguez*, the court reached a similar conclusion. There, the claimant was unable to read or write English or Spanish and spoke only Spanish.[40] The DLI, according to the court, either knew or should have known of these incapacities from the information in its records.[41]

¶25 The lead opinion concludes that Kingery did not qualify for relief because she did not fit within the narrow circumstances described in either of these two cases.

¶26 The dissenting opinion in *Kingery*, signed by four justices, concluded that the superior court did not abuse its discretion by vacating the denial of benefits under CR 60(b)(11) and (c).[42] According to the dissent, the *Ames* and *Rodriguez* decisions were not "intended to foreclose granting relief to persons who, while not non compos mentis (*Ames*) or illiterate (*Rodriguez*), were innocent victims of **circumstances largely beyond their control**."[43] Thus, although Marie Kingery did not qualify for relief under

---

[35] 176 Wash. 509, 30 P.2d 239 (1934).

[36] 85 Wn.2d 949, 540 P.2d 1359 (1975).

[37] *Ames*, 176 Wash. at 510.

[38] *Id.*

[39] *Id.* at 514.

[40] *Rodriguez*, 85 Wn.2d at 950.

[41] *Id.* at 955 n.1.

[42] *Kingery*, 132 Wn.2d at 181-82.

[43] *Id.* at 179 (Alexander, J., dissenting) (emphasis added).

either of these two cases, the dissent believed she qualified for equitable relief and diligently pursued her claim.[44]

¶27 In concurring with the lead opinion in *Kingery*, Justice Madsen wrote:

I agree with [the dissent] that the court's equitable powers are not limited to cases where it is shown that the claimant is essentially incompetent. I agree with the majority, however, that the claimant in this case failed to diligently pursue her rights.[45]

■ ¶28 Examination of these three opinions shows that there is no majority agreement on the full rationale for that case. " '[W]here there is no majority agreement as to the rationale for a decision, the holding of the court is the position taken by those concurring on the narrowest grounds.' "[46]

¶29 In *Kingery*, the justices expressed different reasoning for their conclusions. But, five members of the court in the lead and concurring opinions concluded that the claimant was not diligent in pursuing her rights.[47] Moreover, all nine justices agreed that a court could exercise its equitable power to provide relief in appropriate cases.[48] They differed in the scope of what cases are appropriate for equitable relief.

■ ¶30 We read Justice Madsen's reference to "incompetence" in her concurring opinion to address only the application of the court's equitable power. She does not take issue with the lead opinion's rejection of the application of CR 60 to an untimely appeal of an order from the DLI. We

[44] *Id.* at 181-82 (Alexander, J., dissenting).

[45] *Id.* at 178 (Madsen, J., concurring).

[46] *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 593, 973 P.2d 1011 (1999) (alteration in original) (quoting *Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998)).

[47] *Kingery*, 132 Wn.2d at 176-78.

[48] *Id.* at 173, 178, 180-81.

read this to be an implicit rejection of the dissent's partial reliance on that rule to provide relief.

¶31 We also note that the plain words of the Civil Rules for Superior Court state that they "govern the procedure in the superior court."[49] Pearson fails to present any persuasive authority why this language permits the application of CR 60 to an untimely appeal of an order from the DLI, which is an administrative agency.

¶32 We conclude that CR 60 is not a proper basis to provide relief from the untimely appeal of an order from the DLI. Under *Kingery*, the industrial insurance scheme created by Title 51 RCW limits application of CR 60 to timely appealed decisions of the DLI. Pearson did not appeal within 60 days, as RCW 51.52.060(1)(a) requires. Consequently, he is not entitled to relief under CR 60.

¶33 Pearson relies on RCW 51.52.140 and WAC 263-12--125 to buttress his argument that CR 60 applies to his case. His reliance is misplaced.

¶34 RCW 51.52.140 provides in pertinent part that

[e]xcept as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed *in this chapter*.[50]

The plain words of this statute make clear that the Superior Court Civil Rules apply to appeals prescribed in chapter 51.52 RCW. The provisions of that chapter apply to the BIIA, not the DLI.[51] Thus, reliance on this statute to advance the argument that CR 60 applies to DLI orders is not persuasive.

¶35 Moreover, RCW 51.52.140 also states that such civil rules apply "[e]xcept as otherwise provided in this chapter." RCW 51.52.060(1)(a) *does* otherwise provide that prior to

---

[49] CR 1.

[50] (Emphasis added.)

[51] RCW 51.52.010.

appealing to the courts, "a worker ... must ... file with the board . . . within sixty days . . . a notice of appeal."[52] Therefore, RCW 51.52.140 does not provide a basis for applying CR 60 to an unappealed order of the DLI.

¶36 WAC 263-12-125 states:

*Insofar as applicable, and not in conflict with these rules*, the statutes and rules regarding procedures in civil cases in the superior courts of this state shall be followed.[53]

Like RCW 51.32.240, the provisions of RCW 51.52.050(1) and .060(1)(a) are in conflict with CR 60. Thus, WAC 263-12-125 cannot be read to except the 60-day time limit.

¶37 We also note that RCW 51.32.240, on which Pearson relies to advance his claim, reinforces our conclusion that CR 60 does not provide a proper basis for setting aside an unappealed DLI order.[54] That statute states, in pertinent part:

(2) Whenever the department or self-insurer fails to pay benefits because of clerical error ... or innocent misrepresentation ... the recipient may request an adjustment of benefits . . . .

(a) . . . within one year from the date of the incorrect payment. . . .

(b) The recipient *may not* seek an adjustment of benefits because of *adjudicator error*. Adjustments due to adjudicator error are addressed by the filing of a written request for reconsideration with the department of labor and industries or an appeal with the board of industrial insurance appeals within *sixty days from the date the order is communicated*. . . . "Adjudicator error" includes the failure to consider information in the claim file, failure to secure adequate information, or an error in judgment.[55]

---

[52] RCW 51.52.060(1)(a).

[53] (Emphasis added.)

[54] Respondent's Brief at 12-20.

[55] RCW 51.32.240(2) (emphasis added).

¶38 Here, Pearson claims that "it becomes apparent that the error was . . . the result of either clerical error by the Department or innocent misrepresentation by AF2 (the . . . employer)."[56] But, nowhere in this record is there any indication that DLI's erroneous determination that housing and board should have been excluded from the wage rate order is clerical error. Rather, the wage order was a product of "adjudicator error" by the DLI, as defined by the above statute. As such, under the plain words of RCW 51.32.240, Pearson was required to appeal within 60 days. Pearson has failed to present any authority holding that CR 60(b) permits relief from this explicit statutory provision.

¶39 We conclude that the superior court erroneously granted summary judgment to Pearson based on CR 60(b)(1) and (11). Neither the statutes nor case authority permit the use of CR 60 to provide relief from an unappealed order of the DLI.

¶40 Because of this holding, we do not decide whether Pearson made a sufficient showing that he is entitled to relief under these rules.

### Equitable Relief

¶41 DLI argues that we should decline to consider the equitable rationale enunciated in the superior court's oral ruling, as it is inconsistent with its written ruling, which relies solely on CR 60(b)(1) and (11). Pearson urges us to affirm the superior court on the ground that equitable relief is proper in this case. We hold that the record does not support the granting of equitable relief.

¶42 Generally, if an oral opinion of a court is later superseded by a written opinion, the oral decision should be relied upon only where it is consistent with the findings

---

[56] Respondent's Brief at 14.

and judgment of the written opinion.[57] "[A] trial judge's oral decision is no more than a verbal expression of his informal opinion at that time. It . . . may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment."[58]

¶43 But, we may affirm a lower court decision on any ground supported by the record.[59] A lower court's application of equitable relief is reviewed for an abuse of discretion.[60] "An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons."[61]

¶44 Here, the minute entry of the superior court's oral ruling at the time of argument of the cross motions for summary judgment states:

> The court grants the relief requested. The court indicates that the concept of reliance is applicable in this case. Mr. Pearson signed the necessary document on January 21, 2007, within the statutory time frame, which shows his state of mind, that he was diligently acting to remedy the order that was entered in error. From there, he relied on his attorney, and it is unclear why the appeal was not filed in time. The court is willing to construe this in Mr. Pearson's favor, noting that there needs to be substantial justice.[62]

---

[57] See *Grieco v. Wilson*, 144 Wn. App. 865, 872, 184 P.3d 668 (2008) (quoting *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963)); see also *Grundy v. Brack Family Trust*, 151 Wn. App. 557, 571, 213 P.3d 619 (citing *State v. Bryant*, 78 Wn. App. 805, 812-13, 901 P.2d 1046 (1995)), review denied, 168 Wn.2d 1007 (2009).

[58] *Ferree*, 62 Wn.2d at 566-67.

[59] *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

[60] *Jones v. Home Care of Wash., Inc.*, 152 Wn. App. 674, 679, 216 P.3d 1106 (2009), review denied, 169 Wn.2d 1002 (2010).

[61] *Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App. 203, 221, 242 P.3d 1 (2010), review denied, 171 Wn.2d 1014 (2011).

[62] Clerk's Papers at 22.

¶45 In *Kingery*, a five justice majority, comprised of the lead and concurring opinions, agreed that equitable relief was unavailable to the claimant because the record did not adequately explain her delayed appeal.[63] There is a similar absence in this record of anything to explain Pearson's delay in seeking relief. In short, Pearson has failed to show he was diligent in seeking equitable relief.

¶46 As we previously noted in this opinion, the parties stipulated that the DLI order was communicated to Pearson on December 15, 2006. The order stated:

THIS ORDER BECOMES FINAL 60 DAYS FROM THE DATE IT IS COMMUNICATED TO YOU UNLESS YOU DO ONE OF THE FOLLOWING: FILE A WRITTEN REQUEST FOR RECONSIDERATION WITH THE DEPARTMENT OR FILE A WRITTEN APPEAL WITH THE BOARD OF INDUSTRIAL INSURANCE APPEALS. IF YOU FILE FOR RECONSIDERATION, YOU SHOULD INCLUDE THE REASONS YOU BELIEVE THIS DECISION IS WRONG . . . .[64]

¶47 Here, there was no appeal within the 60-day period specified. Instead, Pearson first protested and requested reconsideration of the order in March 2007. That was some three months after the commencement of the 60-day appeal period.

¶48 This record shows that Pearson signed his "Protest & Request for Reconsideration" on January 21, 2007, within the 60-day period to either appeal or protest.[65] But, the record also shows that this protest was not filed with the DLI until March 8, 2007.[66] Nothing in this record explains this delay in seeking relief.

¶49 In our de novo review of Pearson's motion for summary judgment, we must view the facts and reasonable

---

[63] *Kingery*, 132 Wn.2d at 176.

[64] Certified Appeal Board Record (CABR) Exs. at 56.

[65] CABR Exs. at 65.

[66] CABR Exs. at 63-65.

inferences in the light most favorable to the DLI, the nonmoving party. Doing so, we are struck by the absence of anything in this record to explain the delay in seeking relief from the DLI order. While the superior court acknowledged the absence of any explanation for the delay in its oral ruling, it construed the absence of evidence in Pearson's favor. But the absence of evidence cannot be construed in favor of the moving party in a summary judgment motion. Rather, the absence of evidence supports DLI's cross motion for summary judgment. In sum, the absence of evidence of diligence in seeking relief from the DLI order bars the claim for equitable relief.

¶50 Pearson argues that he has demonstrated diligence by his frequent telephonic contacts with the DLI during the period following his injury in 2006. That argument focuses on the wrong period. There is nothing to show diligence in pursuing relief following the signing of his protest in January 2007, when he had full knowledge of the December 12, 2006, order.

¶51 Moreover, even if we assumed that this record establishes Pearson's diligence in pursuing relief, there is nothing to show that he qualifies for such relief.

¶52 The equitable exceptions that have been allowed by this state's courts are limited. In *Ames* and *Rodriguez*, there was some misconduct on the part of the DLI and the claimant was not competent to understand the content of the DLI's written order. While the DLI erred in Pearson's case by failing to include his room and board in its wage order, its error does not constitute misconduct. Further, Pearson was fully competent to understand the content of the DLI's written order.

¶53 Similarly in *Rabey v. Department of Labor & Industries*,[67] where a widow did not timely file an appeal with the DLI for widow benefits, Division Three of this court found that equity should excuse her delay given her shock and

---

[67] 101 Wn. App. 390, 3 P.3d 217 (2000).

disorientation after her husband's death.[68] The shock she experienced prevented her from fully comprehending the appeals process. There is no evidence that Pearson was in shock or otherwise was unable to comprehend the DLI order.

¶54 Further, in *Kustura v. Department of Labor & Industries*,[69] this court found that equity did not excuse untimely appeals where DLI orders were properly communicated to workers, even if the worker could not understand English. This court noted in *Rodriguez* that "the Washington Supreme Court interpreted 'communicated' as used in this statute to require only that the worker received the order, not understood it."[70] Even if Pearson were to argue that he was somehow unable to understand the DLI's order, he stipulated that it was clearly communicated to him.

¶55 Nor is there any showing in this record that this case falls within circumstances beyond Pearson's control, an exception the dissent discusses in *Kingery* and that Division Two of this court applied in *Fields Corp. v. Department of Labor & Industries*.[71] In *Fields*, a Fields employee reported two separate employment-related injuries to the DLI. Only after the 60 day time period had elapsed did it become apparent to the Fields Corporation that both claims were for the same condition. There, Division Two found that Fields' demand for equitable relief from the 60-day time limit was merited as a timely appeal was "not just difficult or impractical" but ***impossible***.[72]

¶56 Though Pearson argues that it was "impossible" for him to obtain documentation to show room and board, this is irrelevant. The question in the *Kingery* dissent and in

---

[68] *Id.* at 397-98.

[69] 142 Wn. App. 655, 175 P.3d 1117 (2008).

[70] *Id.* at 670 (citing *Rodriguez*, 85 Wn.2d at 952-53).

[71] 112 Wn. App. 450, 45 P.3d 1121 (2002).

[72] *Id.* at 460.

*Fields* was whether it was possible for the individual to *appeal* the DLI order within 60 days, given the information known during that time. It was not a question of whether it was possible for the individual to provide information demonstrating DLI's error within 60 days. Here, Pearson was aware of the basis for his challenge to the DLI order within 60 days of its communication. Whether it was possible for him to produce proof of his room and board within 60 days is of no consequence.

¶57 We conclude that Pearson has failed in his burden to show he is entitled to equitable relief. He fails to show he exercised diligence in seeking relief. Moreover, he fails either to meet any of the narrowly defined circumstances in which this state's courts have allowed equitable relief or show any other basis for equitable relief.

## ATTORNEY FEES

¶58 Pearson requests attorney fees and costs on appeal under RCW 51.52.130 and RAP 18.1. Because he has not prevailed, we deny his request.

¶59 An award of fees and costs under RCW 51.52.130 requires both that the injured worker requesting fees prevail in the action and that the accident fund or medical aid fund be affected.[73] Neither condition exists here. Thus, he is not entitled to an award of fees.

¶60 To summarize, the superior court erroneously applied CR 60(b)(1) and (11) to grant relief to Pearson for his untimely appeal of the wage order of the DLI. And this record does not demonstrate Pearson's diligence in seeking equitable relief. Finally, he fails to demonstrate that he would have been entitled to equitable relief had he been diligent in seeking it. The DLI is entitled to entry of

---

[73] *Lenk v. Dep't of Labor & Indus.*, 3 Wn. App. 977, 987, 478 P.2d 761 (1970) (worker prevailed but, citing RCW 51.52.130, the court held that "[a]ttorney's fees cannot be allowed because the accident fund has not been affected by the litigation").

summary judgment. Pearson is not entitled to an award of attorney fees.

¶61  We reverse the summary judgment order in favor of Pearson and remand with directions to enter summary judgment in favor of the Department of Labor and Industries. We deny the request for an award of attorney fees.

LEACH, A.C.J., and LAU, J., concur.